**OHIO–SEALY MATTRESS MANUFACTURING COMPANY et al., Plaintiffs,**

**v.**

**SEALY, INC., et al., Defendants.**

**No. 76 C 0810.**

United States District Court,
N. D. Illinois, E. D.

March 9, 1981.

11. See fn. 4, *supra*.

Frederick F. Brace, Jr., William H. Tobin, Sidley & Austin, Chicago, Ill., for plaintiffs.

Howard Koven, Phil C. Neal, Friedman & Koven, Samuel Weisbard, McDermott, Will & Emery, John H. Matheson, Hedlund, Hunter & Lynch, Edward I. Rothschild, Rothschild, Barry & Myers, Max Wildman, Wildman, Harrold, Allen & Dixon, Richard K. Wray, Arnstein, Gluck, Weitzenfeld & Minow, Henry S. Kaplan, Dressler, Goldsmith, Shore, Sutker & Milnamow, Eli E. Fink, Fink, Coff & Stern, Robert H. Joyce, Seyfarth, Shaw, Fairweather & Geraldson, Albert E. Jenner, Jr., Chicago, Ill., Fred B. Miller, Portland, Or., Michael W. Coffield, Gregory A. Friedman, Coffield, Ungaretti, Harris & Slavin, Louis B. Garippo, Thomas J. Campbell, Winston & Strawn, James E. Hastings, Chadwell, Kayser, Ruggles, McGee & Hastings, Stanley B. Block, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

In a Memorandum Opinion and Order dated September 17, 1980, this Court denied defendants' claim of attorney-client privilege as to the bulk of documents sought by plaintiffs from settling defendants Hertz, Moffit, and Rosenfeld.[1] As to Michigan-Sealy, a former joint defendant who has initiated subsequent litigation against the defendants herein,[2] the Court affirmed Magistrate Cooley's ruling that the attorney-client privilege did not bar production of the Hertz, Moffit, and Rosenfeld documents, or of the contemplated Moffit deposition testimony.[3] In addition, the Court affirmed the Magistrate's conclusion that the attorney-client privilege did not attach to the deposition testimony and documents sought from Morris J. Coff. As to all of the requested production, however, the Court remanded the case to the Magistrate for consideration of whether the information is subject to the work product privilege.

The parties briefed this issue before the Magistrate, and on December 5, 1980, Magistrate Cooley ruled that the work product privilege attached to all the Hertz, Moffit, and Rosenfeld documents as well as to the requested Moffit testimony. Accordingly, he barred dissemination of that information to plaintiffs. The Magistrate, however, ruled that Michigan-Sealy, as a former joint defendant now engaged in subsequent litigation against defendants, could pierce the privilege and obtain this material. Finally, Magistrate Cooley found that the Coff documents and testimony were not work product.

Both parties have filed timely exceptions to certain aspects of Magistrate Cooley's decision. Plaintiffs seek review of the Magistrate's conclusion that the Hertz, Moffit, and Rosenfeld documents are protected by the work-product privilege.[4] Defendants, on the other hand, object to that part of Magistrate Cooley's ruling that al-

1. *Ohio-Sealy Mattress Manufacturing Co. v. Kaplan,* 90 F.R.D. 21 (N.D.Ill.1980). The Court held that Moffit Document Numbers 8, part of 9, 10, 14, and Rosenfeld Document Number 10 were subject to the attorney-client privilege; all other documents possessed by Hertz, Moffit, and Rosenfeld were found not privileged.

2. *Sealy Mattress Company of Michigan, Inc. v. Sealy, Inc.,* 80 C 4676 (N.D.Ill.).

3. Pursuant to this Court's September 17 opinion, however, the Magistrate ruled that Michigan-Sealy could not disclose to Ohio-Sealy that information which it obtained from defendants.

4. It is unclear from plaintiffs' motion whether they object as well to the Magistrate's ruling that they may not obtain deposition testimony from Moffit. In light of the Court's ruling affirming the Magistrate's decision in this regard, however, this uncertainty is of little moment.

lows Michigan-Sealy to pierce the work product privilege.[5]

■ The Court begins by pointing out that the various documents and requested deposition testimony may contain attorney work product even though they are not all subject to the attorney client privilege. The Seventh Circuit recently has emphasized that the work product doctrine is broader than attorney-client privilege: "[a]lthough only confidential communications between the attorney and client are protected by the attorney-client privilege, the work product doctrine may encompass any document prepared in anticipation of litigation by or for the attorney." *In re September 1978 Grand Jury (II)*, 640 F.2d 49 at 62 (7th Cir., 1980), *as modified*, December 19, 1980. Both the work product and the attorney-client privileges seek to protect client confidences and thus foster attorney-client communications; the work product doctrine, however, embodies the additional policy of establishing "a protected area in which the lawyer can prepare his case free from adversarial scrutiny." *Id.* at 62. Thus, while only a client may invoke the attorney-client privilege, both the attorney and the client have standing—albeit for different reasons—to assert the work product privilege. *Id.* It is in light of these governing principles that the Court addresses the parties' contentions.

■ Plaintiffs in essence raise the same contentions here as they did before the Magistrate: that the work product privilege is inapplicable because the information sought does not reflect client confidences and because the materials were not prepared for the defendants' attorneys' own use. These arguments were unavailing before the Magistrate, and they are unpersuasive to this Court as well. *In re September 1978*

*Grand Jury (II)* clearly forecloses the former contention. The latter point is untenable in light of Fed.R.Civ.P. 26(b)(3), which accords work product protection to attorney materials "concerning the litigation." Moreover, contrary to plaintiffs' position, it is not inconsistent with an attorney's *own* use of material to distribute that material to his clients.

■ Plaintiffs now raise the additional contention that certain of the information contained in the materials sought, such as the attorneys' impressions about the case, are unavailable to them through other sources. In order to obtain this type of core work product material, however, a party must show more than unavailability by other sources; it must make a strong showing of need. As the court observed in *In re September 1978 Grand Jury (II)*, movants rarely have been able to establish a degree of need sufficient to overcome the work product privilege. *Id.* at 63, *citing* 4 J. Moore, Federal Practice § 26.03[8] at 394 (2d Ed. 1979). Plaintiffs here have fallen far short of making the requisite showing of need. Accordingly, the Court affirms the Magistrate's finding of work product privilege as not "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).[6]

Whether Michigan-Sealy may overcome the work product privilege as a former joint defendant now engaged in adverse litigation against the defendants herein presents a more difficult question. It seems clear that the joint client doctrine applies to this case at least to the extent that the privilege is not waived in its entirety when parties and their counsel who are engaged in a common defense exchange work product. *See Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 555 (N.D.Ill.1964) ("Where attorneys for parties have a mutu-

---

**5.** Defendants have not objected to the Magistrate's ruling with respect to the testimony and documents sought from Coff.

**6.** Plaintiffs and defendants alike have seized upon this motion as a means of inviting the Court to reconsider certain aspects of its September 17 ruling. Plaintiffs ask that the Court reconsider its conclusion that defendants are not guilty of ongoing fraud; defendants seek reversal of the Court's ruling that the attorney-client privilege attaches only to those attorney communications that reveal confidential client statements. Assuming that these requests are properly before the Court—and that proposition is not wholly free from doubt—they are rejected on their merits.

al interest in litigation exchange their work product, it remains protected by a qualified privilege."). *See also Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26, 45 (D.Md. 1974); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C.1974); *Transmirra Products Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572, 579 (S.D.N.Y. 1960). This being the case, the question is whether, as with the attorney-client privilege, the work product privilege is dissipated when the former joint defendants square off against one another in subsequent litigation. The Magistrate, without discussion, answered that question in the affirmative. For the reasons that follow, the Court must disagree.

Although there is no authority directly pertinent to this question,[7] *In re September 1978 Grand Jury (II)* does suggest the appropriate mode of analysis. There, in considering whether the existence of client fraud precluded application of the work product privilege, the court examined separately the interest of the client and of the attorney in invoking the privilege. The court found it inappropriate to permit a client to assert the privilege in order to prevent disclosure of information which had been given to the attorney as part of a scheme of ongoing fraud. *Id.* at 63. With respect to the attorney's right to assert the privilege, however, the court balanced this policy in favor of disclosure where an attorney has been used by a client to engage in fraud against "the policy in favor of insulating the attorney's work product for the sake of the attorney." *Id.* at 63. The court found that while all information furnished by the client to the attorney should be

disclosed, "the attorney's mental impressions, conclusions, opinions, and legal theories must still be protected in order to avoid an invasion of the attorney's necessary privacy in his work." *Id.* at 63.

█ Applying this analysis to the instant case, the Court concludes that the defendants themselves may not assert the work product privilege against Michigan-Sealy. As noted earlier, the client's interest in work product is the same as its interest in attorney-client privilege; both doctrines prevent disclosure of confidential information about a case. Where parties, as here, have engaged in a joint enterprise for defense against litigation, they have no legitimate expectation that the attorney-client privilege will prevent use of joint defense material if one of the parties later becomes an adverse litigant; the Court has so held in this very lawsuit. *Ohio-Sealy Mattress Manufacturing Co. v. Kaplan*, 90 F.R.D. 29, at 21 (N.D.Ill.1980). Accordingly, neither can the defendants herein expect to invoke the work product privilege against a former joint defendant turned adversary.

The ability of defendants' *counsel* to assert the work product privilege, however, presents a different question. Defendants concede that Michigan-Sealy is entitled to possession and use of those documents that it has obtained by virtue of its participation in the joint defense. The focus of the dispute, therefore, is upon the request for information that was developed during the joint defense effort but not directly transmitted to Michigan-Sealy.[8] Defendants maintain that every failure of counsel to provide Michigan-Sealy with a document generated by the joint defense should be

---

7. Defendants have cited authority for the proposition that work product generated in one litigation retains its protection from disclosure even in subsequent, related litigation. *See In Re Murphy*, 560 F.2d 326, 334–335 and n.13 (8th Cir. 1977), and cases cited therein. These cases are wide of the mark, however, as they do not involve the situation presented here, where the party seeking disclosure in the subsequent, related litigation was a joint defendant in the litigation in which the work product was generated.
In *Truck Insurance Exchange v. St. Paul Fire & Marine Insurance Co.*, 66 F.R.D. 129, 136 (E.D.

Pa.1975), the court did allow a former joint client who had become an adversary in subsequent litigation to obtain work product generated during the prior representation. The court, however, based its ruling on the movant's showing of special need in that case.

8. Michigan-Sealy does not assert a right to work product generated by defendants' counsel subsequent to the joint representation; nor, in light of the analysis developed below, would the Court be receptive to such an argument.

construed as an assertion by counsel of the work product privilege against Michigan-Sealy. The Court rejects this argument, as it is based on the untenable assumption that an attorney routinely transmits to a client each and every document generated by reason of the representation.

Nonetheless, there are persuasive reasons for permitting defendants' counsel to assert the work product privilege to protect from disclosure to Michigan-Sealy information not transmitted during the joint representation. Were the Court to rule that Michigan-Sealy could raid the files of defense counsel to obtain the information they seek, "much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own." *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). Moreover, to the extent that counsel considered it possible that potential joint clients subsequently might become adversaries, joint representation would be discouraged. This not only would diminish the ability of parties to put forth their best possible defense in a litigation, but would increase duplication of efforts and adversely affect judicial economy as well.

On the other hand, by protecting the information not disclosed to Michigan-Sealy during the joint representations and yet permitting it to use that information which it did receive, the Court in effect would discourage attorneys engaged in joint representations from disclosing information to their clients. Such a course might be at odds at least with the spirit of the attorney-client privilege, which seeks to ensure the free flow of communication between attorney and client.

As is evident from the foregoing, the balance to be struck in this case is a difficult one. As did the court in *In re September 1978 Grand Jury (II)*, the Court deems it appropriate here to strike the balance according to the type of information at issue. Thus, the Court holds that Michigan-Sealy may not obtain basic core work product material—counsel's mental impressions, conclusions, opinions, and legal theories about the case. Information which Michigan-Sealy provided defendants' counsel, as well as other, more peripheral work product material, will be subject to production. This will require the parties to return once more to the Magistrate for a determination of which category various of the requested materials fall within.

Accordingly, the Court affirms the Magistrate's Order precluding plaintiffs from obtaining the requested information by reason of the work product privilege. The Court modifies the Magistrate's ruling with respect to Michigan-Sealy's right to pierce the privilege under the joint client theory, and remands the case to the Magistrate for further proceedings consistent with that modification. It is so ordered.